IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MONIQUE SPEIGHTS**<br><br>v.<br><br>**ARSENS HOME CARE, INC.<br>d/b/a CAREGIVERS AMERICA** | **CIVIL ACTION**<br><br>**NO. 19-2343** |

**MEMORANDUM RE:  MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                                    **July 22, 2020**

## I.     INTRODUCTION

Plaintiff Monique Speights was dismissed by her employer, Defendant Arsens Home Care, Inc., shortly after taking FMLA leave to have surgery, and shortly after requesting additional leave to care for a family member.  Plaintiff contends that her dismissal was motivated by impermissible factors, and she filed an Amended Complaint alleging the following Counts against Arsens:

1. **Count I**:   Disability Discrimination and Retaliation in violation of the Americans With Disabilities Act ("ADA");

2. **Count II**:  Associational Disability Discrimination in violation of the ADA;

3. **Count III**: Retaliation and Interference in violation of the Family and Medical Leave Act ("FMLA");

4. **Count IV**: Violations of the Pennsylvania Human Relations Act ("PHRA"); and

5. **Count V**:   Violations of the Philadelphia Fair Practices Ordinance ("PFPO").

(ECF 23 "Am. Compl.")  Before the Court is Arsens's Motion for Summary Judgment on each of Plaintiff's claims.  For the reasons stated below, Arsens's Motion will be denied.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Arsens is a home healthcare provider where Plaintiff began working in 2015.  (ECF 43-1, Pl.'s Counter Statement of Material and Disputed Facts "Pl.'s SMDF" ¶¶ 2, 5.)  When Plaintiff

was promoted to Human Resources Assistant in 2017, her duties came to include hiring and onboarding caregivers, coordinating schedules, and administering tuberculosis ("TB") tests as backup to Arsens's LPN, Brandi Vanderhall. (Pl.'s SMDF ¶¶ 6–7, 81.) During her tenure at Arsens, Plaintiff had positive performance reviews, and her peers and managers generally considered her to be a dependable, responsible worker. (Pl.'s SMDF ¶¶ 8–13.)

In early 2018, Arsens was acquired by Caregivers America. (Pl.'s SMDF ¶ 14.) While Caregivers America was installing a new management team, Arsens's owner temporarily stayed with the company to ease the transition. (Pl.'s SMDF ¶¶ 14–16.) But by the end of the year, numerous employees had left Arsens, causing a staffing shortage in HR. (Pl.'s SMDF ¶ 17.) In response, the new Director of Operations, Philippe Liautaud, began calling daily meetings to encourage employees to remain at the company. In those meetings, he emphasized that he needed everyone to come into work. (Pl.'s SMDF ¶ 18.) Liautaud testified that it was concerning to him if an employee took time off during this period. (Pl.'s SMDF ¶ 28.)

Plaintiff suffered from carpal tunnel syndrome, and requested FMLA leave to have surgery on her hand. Arsens approved Plaintiff's FMLA leave, which began on September 28, 2018. (Pl.'s SMDF ¶ 19, 22.) According to HR Assistant Toya Henegan, while Plaintiff was out on leave, Liautaud began expressing his annoyance with the understaffing at Arsens, through his tone and body language, as well as through comments such as "[y]ou're killing me!" (Pl.'s SMDF ¶¶ 26–27.)[1]

---

[1] Arsens argues that Henegan retreated from her testimony about Liautaud's behavior when pressed during her deposition. (Arsens's Reply 8.) But the amount of weight to afford Henegan's testimony is a question for the finder of fact, not for the Court on summary judgment. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). Henegan's testimony, viewed in the light most favorable to Plaintiff, provides evidence that Liautaud expressed annoyance that Plaintiff was on leave.

Four days after her surgery, Plaintiff's doctor provided her with a note explaining that she could only perform work with her right hand. Plaintiff forwarded this note to Arsens. (Pl.'s SMDF ¶ 30.) On October 9, 2018, eleven days after Plaintiff began her FMLA leave, Plaintiff's doctor reevaluated her, and cleared her to return to work with no restrictions. (Pl.'s SMDF ¶ 31.) On the same day, Plaintiff went to Arsens and submitted her doctor's note to General Counsel Jillian Fisher. (Pl.'s SMDF ¶ 32.) While she was at the facility, Plaintiff also began the process of requesting intermittent FMLA leave to care for her mother, who was suffering from lung cancer. (Pl.'s SMDF ¶ 33.) Plaintiff returned to work the next day, and gave Fisher the completed FMLA paperwork. (Pl.'s SMDF ¶ 35.) Fisher, who spoke with Liautaud regularly, met with Liautaud and HR Manager Tatyana Morgan-Hawkins shortly after Plaintiff submitted the paperwork. (Pl.'s SMDF ¶ 38; ECF 43, Pl.'s Opp'n, Ex. M, Fisher Dep. 20:2–14.)

Plaintiff's second day back from leave was a Thursday, and on that day she was asked to administer a TB test to a caregiver. (Pl.'s SMDF ¶ 44.) Generally, it was Arsens's practice not to administer TB tests on Thursdays because that would require the caregiver to return and have the test read over the weekend, which was a logistical challenge. (Pl.'s SMDF ¶ 45.) With this in mind, Plaintiff questioned whether to give the test. (Pl.'s SMDF ¶ 46.) Although there is some dispute about how emphatically Plaintiff responded, it appears that she did so with some vigor, saying, "What? This is crazy." (Pl.'s Opp'n, Ex. I, Henegan Decl. ¶ 9.) During the commotion, another employee administered the TB test. (Pl.'s SMDF ¶ 48.)

Later that day, Henegan talked to Morgan-Hawkins about the incident concerning Plaintiff and the TB test. (Pl.'s Opp'n, Ex. G, Hawkins Dep. 32:11–33:19.) Morgan-Hawkins then spoke with Liautaud, who called Plaintiff into his office to discuss the situation. (Pl.'s SMDF ¶ 52.) Henegan was also called into Liautaud's office, and Liautaud asked her about what happened

3

earlier in the day. (ECF 34-3, Arsens's Statement of Undisputed Material Facts "Arsens's SUMF" ¶ 48.) After a short discussion, Liautaud fired Plaintiff. (Pl.'s SMDF ¶ 55.) Although Liautaud asserted that he made the decision to terminate Plaintiff's employment on the spot, Morgan-Hawkins testified that Liautaud told her that he planned to fire Plaintiff before the discussion even began. (Pl.'s SMDF ¶ 58.)

Plaintiff filed a Complaint in this Court, (ECF 1), which was later amended to state claims under the ADA, FMLA, PHRA, and PFPO, against Arsens, (ECF 23.) After discovery, Arsens filed a Motion for Summary Judgment, (ECF 34 "MSJ"), Plaintiff filed a Response in Opposition, (ECF 43 "Pl.'s Opp'n"), and Arsens filed a Reply, (ECF 47 "Arsens's Reply.")[2]

## III. LEGAL STANDARD

Summary judgment is proper if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine—and will preclude a grant of summary judgment—if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a fact "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. Only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" is a grant of summary judgment appropriate. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the district court is obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust

---

[2] Plaintiff's Motion to Strike Defendant's Expert Report and Witness, (ECF 33), is also pending before the Court.

Litig., 801 F.3d 383, 396 (3d Cir. 2015).

It is the responsibility of the litigant seeking summary judgment to inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's initial burden can be met by simply pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—demonstrating the existence of a genuine triable dispute. Fed. R. Civ. P. 56(c).

## IV.  PARTIES' CONTENTIONS

### A. Arsens

Arsens asserts Plaintiff has not produced enough evidence of causation on any of her claims. According to Arsens, there is no evidence that Liautaud knew that Plaintiff was suffering from a disability, (MSJ 11–12), that Plaintiff's mother was suffering from a disability, (MSJ 14), or that Plaintiff had taken or requested any FMLA leave, (MSJ 16.) Although Arsens recognizes that Plaintiff's dismissal came close in time to her protected activity, Arsens contends that the temporal proximity alone is insufficient to establish causation. (MSJ 16–17.)

Arsens also argues that Plaintiff's FMLA interference claim is duplicative of her FMLA retaliation claim, because they both rely on the same facts, specifically, Plaintiff's request for intermittent FMLA leave. (MSJ 18.) In addition, Arsens denies that it withheld any FMLA leave from Plaintiff. (MSJ 18.)

As to whether Arsens's reason for dismissing Plaintiff was pretextual, Arsens contends that

Plaintiff has not presented any evidence to call into question its legitimate non-discriminatory reason for dismissing Plaintiff.  Arsens asserts that Plaintiff was dismissed because she failed to administer a TB test when requested.  (MSJ 19.)  Echoing its causation argument, Arsens contends that temporal proximity alone is insufficient to establish pretext, and, in any event, Plaintiff's failure to administer a TB test was an intervening circumstance that cut off any possible causal chain.  (MSJ 21.)

### B. Plaintiff

Plaintiff argues that a reasonable jury could infer that Liautaud knew of Plaintiff's protected activity.  As to Plaintiff's disability, and the FMLA leave she took, Plaintiff argues that Liautaud's testimony that he knew Plaintiff was out on leave for a surgical procedure is enough for a jury to infer that he knew she was out on FMLA leave to care for her disability.  (Pl.'s Opp'n 18–19.)  Plaintiff further argues that a reasonable jury could infer that Liautaud knew of her request for intermittent FMLA leave to take care of her mother, because Liautaud met with Fisher shortly after Plaintiff filed FMLA paperwork with Fisher.  (Pl.'s Opp'n 6–7.)  Plaintiff further contends that because of the extremely close temporal proximity between Plaintiff's protected activity and her dismissal, a jury could reasonably infer a causal link based on the timing alone.  (Pl.'s Opp'n 10–11, 19–20.)

Plaintiff argues that the Third Circuit has allowed both FMLA interference and retaliation claims to go forward based on the same adverse employment action.  (Pl.'s Opp'n 16.)  Plaintiff also asserts that regardless of whether Arsens asserts that it would have granted Plaintiff's intermittent FMLA leave, the fact remains that she was never approved for that leave.  (Pl.'s Opp'n 15–16.)

As to pretext, Plaintiff contends that she has produced enough evidence from which a jury

6

could doubt Arsens's articulated non-discriminatory justification for Plaintiff's dismissal. Plaintiff argues that Liautaud's antagonistic behavior towards employees taking leave, combined with conflicting evidence about the events in question, provides an adequate evidentiary basis for establishing pretext. (Pl.'s Opp'n 12–13.)

V. **DISCUSSION**

  A. **Plaintiff's Prima Facie Case**

The parties agree that Plaintiff's claims under the ADA, and her FMLA retaliation claim, follow the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3] Under the McDonnell Douglas framework, it is the plaintiff's initial burden to establish a prima facie case of discrimination or retaliation. Ross v. Gilhuly, 755 F.3d 185, 193 (3d Cir. 2014). If the plaintiff satisfies his or her burden, the burden then shifts to the defendant to articulate a legitimate non-discriminatory or non-retaliatory reason for the taken course of action. Id. If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's articulated reason is pretext for impermissible discrimination or retaliation. Id.

  1. **Actual Disability Discrimination**

To establish a prima facie case of disability discrimination, Plaintiff must present evidence that:

(1) [s]he is a disabled person within the meaning of the ADA;

(2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and

(3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination.

---

[3] The parties also agree that Plaintiff's claims under the PHRA and PFPO are evaluated under essentially the same rubric as Plaintiff's ADA and FMLA claims, respectively. (MSJ 10–11 n.2; Pl.'s Opp'n 17 n.9.) The Court will therefore evaluate these claims together.

Gaul v. Lucent Techs., Inc., 134 F. 3d 576, 580 (3d Cir. 1998). In establishing a prima facie case, Plaintiff's burden is "not meant to be onerous." Fischer v. Pepper Hamilton LLP, No. 15-2413, 2016 WL 362507, at *14 (E.D. Pa. Jan. 29, 2016) (Pappert, J.) (quoting Cellucci v. RBS Citizens, N.A., 987 F. Supp. 2d 578, 589 (E.D. Pa. 2013) (Robreno, J.)).

Here, Arsens does not challenge whether Plaintiff's carpal tunnel syndrome qualifies as a disability, or whether she was qualified to perform the essential functions of her job. Arsens contends only that Plaintiff has not satisfied her prima facie burden of showing that she was dismissed as a result of her disability, because there is no evidence that Liautaud knew Plaintiff was disabled. (MSJ 11–12.) When Plaintiff was dismissed, however, Liautaud knew that Plaintiff had taken leave to undergo a surgical procedure. (Pl.'s SMDF ¶ 24.) A jury could reasonably infer that Liautaud's awareness of Plaintiff's surgery put him on notice that Plaintiff was suffering from a disability. Thus, there remains a genuine factual dispute about what Liautaud knew.

Here, Plaintiff can demonstrate causation by showing an unusually suggestive temporal proximity between when Liautaud became aware of Plaintiff's disability and when he dismissed her. See Decker v. Alliant Technologies, LLC, 871 F. Supp. 2d 413, 428–29 (E.D. Pa. 2012) (Pratter, J.). The thirteen-day gap between the commencement of Plaintiff's leave and her dismissal is close enough in time that a jury could reasonably infer causation. See Hammond v. City of Wilkes Barre, 628 F. App'x 806, 808 (3d Cir. 2015) (non-precedential) (suggesting that "two weeks may be close enough temporally to be probative of causation"); LeBlanc v. Hill School, No. 14-1674, 2015 WL 144135, at *19 (E.D. Pa. Jan. 12, 2015) (Padova, J.) ("Thirteen days between protected activity and an adverse employment action may be unusually suggestive of [an impermissible] motive.").

The suggestiveness of Plaintiff's dismissal is heightened by the fact that Liautaud

8

terminated Plaintiff's employment the day after she returned from her leave. See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012) (holding that Lichtenstein's dismissal seven days after invoking her right to leave, and three days after returning to work, was unusually suggestive); Reinhart v. Mineral Techs. Inc., No. 05-4203, 2006 WL 4050695, at *11 (E.D. Pa. Nov. 27, 2006) (Yohn, J.) (finding Reinhart's dismissal twenty-four hours after returning from FMLA leave sufficient to establish causation). Plaintiff, therefore, has produced enough evidence to establish a prima facie case of disability discrimination.

### 2. Associational Disability Discrimination

Although the Third Circuit has not enunciated a test for establishing a prima facie case of associational disability discrimination in a published opinion, it has expressed approval of a test comprised of the following elements:

(1) the plaintiff was "qualified" for the job at the time of the adverse employment action;

(2) the plaintiff was subjected to adverse employment action;

(3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; [and]

(4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

Dodson v. Coatesville Hosp. Corp., 773 F. App'x 78, 83 n.8 (3d Cir. 2019) (non-precedential) (alteration in original) (quoting Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997)); see also Tyson v. Access Servs., 158 F. Supp. 3d 309, 314 (E.D. Pa. 2016) (Baylson, J.) (applying a similar four-part test to a claim of associational disability discrimination (citing Pollere v. USIG Pennsylvania, Inc., 136 F. Supp. 3d 680, 685 (E.D. Pa. 2015) (McHugh, J.)).

Arsens argues that Plaintiff cannot satisfy the third or fourth element because there is no

evidence that Liautaud knew of Plaintiff's mother's condition. (MSJ 14.)[4] But Plaintiff spoke to Jill Fisher about requesting leave to care for her sick mother two days before Plaintiff was dismissed. (Pl.'s SMDF ¶ 33.) Liautaud, who was the Director of Operations, had regular meetings with Fisher, including the day before he dismissed Plaintiff. (Pl.'s SMDF ¶ 38.) Viewed in the light most favorable to Plaintiff, a reasonable jury could infer that Liautaud had learned of Plaintiff's request for intermittent FMLA leave. Similarly, the two days between when Plaintiff informed Arsens of her mother's condition, and when Liautaud dismissed Plaintiff from her position, may allow a reasonable jury to find causation at this stage. See Hammond, 628 F. App'x at 808 (non-precedential); LeBlanc, 2015 WL 144135, at *19. Plaintiff has provided enough evidence to establish a prima facie case of associational disability discrimination.

### 3. ADA Retaliation

For Plaintiff to survive summary judgment on her ADA retaliation claim, she must present evidence capable of satisfying the following elements at trial:

(1) protected employee activity;

(2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and

(3) a causal connection between the employee's protected activity and the

---

[4] Arsens also references three circumstances in which the Third Circuit has suggested that a plaintiff might prevail on a claim of associational disability discrimination, and argues that Plaintiff does not satisfy any of them. (MSJ 13.) These circumstances are: "(1) termination based on a disabled relative's perceived health care costs to the company; (2) termination based on fear of an employee contracting or spreading a relative's disease; and (3) termination because an employee is somewhat distracted by a relative's disability, yet not so distracted that he requires accommodations to satisfactorily perform the functions of his job." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 511 n.7 (3d Cir. 2009) (citing Larimer v. Int'l Bus. Machs. Corp., 370 F.3d 698, 700 (7th Cir. 2004)). But Arsens cites nothing to suggest that these circumstances are an exhaustive list of the methods capable of establishing associational disability discrimination. See id. (describing these three circumstances as the "other circumstances not at issue in this case" under which "a plaintiff may prevail under the association provision" of the ADA).

employer's adverse action.

Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).

Arsens contends that Plaintiff's ADA retaliation claim fails because she did not require any restrictions when she returned to work. (MSJ 14–15.) But Arsens cites no authority that requires a plaintiff alleging retaliation to actually require the accommodation at the time of the adverse employment action to establish a prima facie case. To the contrary, the Third Circuit has held that a plaintiff need not even suffer from a disability in order maintain a retaliation claim. Krouse, 126 F.3d at 502–03. Instead, a plaintiff need only presents evidence from which a reasonable jury could infer that there was a causal connection between protected activity and an adverse employment action. Id. Here, Arsens does not contest that Plaintiff engaged in protected activity under the ADA by requesting leave to undergo carpal tunnel surgery, and by requesting an accommodation when she returned. To establish a prima facie case, Plaintiff's burden is to present evidence of a causal relationship between her protected activity and dismissal.

Plaintiff can satisfy this burden by showing that an unusually suggestive temporal proximity. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 & n.9 (3d Cir. 2003). Based on the principles previously discussed, the nine days between Plaintiff's accommodation request and her dismissal, (Pl.'s SMDF ¶¶ 22, 30), and the thirteen days between Plaintiff's initial FMLA leave request and dismissal, (Pl.'s SMDF ¶¶ 22, 44, 55), provide evidence of an unusually suggestive temporal proximity sufficient to prove a causal link at trial. See Hammond, 628 F. App'x at 808 (non-precedential); LeBlanc, 2015 WL 144135, at *19. Plaintiff has therefore produced enough evidence to establish a prima facie case of retaliation under the ADA.

### 4. FMLA Retaliation

Plaintiff contends that her dismissal was retaliation for taking FMLA leave to have carpal tunnel surgery, and requesting additional FMLA leave to care for her sick mother. To establish a prima facie case of FMLA retaliation, Plaintiff will be required to prove that:

(1) she invoked her right to FMLA-qualifying leave,

(2) she suffered an adverse employment decision, and

(3) the adverse action was causally related to her invocation of rights.

Lichtenstein, 691 F.3d at 302 (citing Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508–09 (3d Cir. 2009)).

As with Plaintiff's claims under the ADA, Arsens challenges the causal element of Plaintiff's prima facie case. (MSJ 15–16.) And, as with Plaintiff's ADA claims, Plaintiff can satisfy the causal element here based on the unusually suggestive temporal proximity between her FMLA leave and her dismissal. Because, as explained above, a reasonable jury could infer that Liautaud learned of Plaintiff's disability when her leave commenced, a jury could also infer that Liautaud knew Plaintiff was on FMLA leave. The thirteen-day gap between Plaintiff's leave and her dismissal, and the two-day gap between Plaintiff's request for intermittent leave and her dismissal, may allow a jury to find that Plaintiff was dismissed as a result of her taking or requesting FMLA leave. See Hammond, 628 F. App'x at 808 (non-precedential); LeBlanc, 2015 WL 144135, at *19. Viewed in the light most favorable to Plaintiff, the record contains sufficient evidence for Plaintiff to establish a prima facie case of FMLA retaliation.

### B. Pretext

Arsens articulated reason for dismissing Plaintiff is that she did not perform a TB test when asked to do so. (MSJ 19.) To survive summary judgment, Plaintiff must raise evidence of

"weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Arsens's proffered reason such that "a reasonable factfinder could rationally find [it] 'unworthy of credence,' and hence infer 'that [Arsens] did not act" for that reason. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (citation omitted). If Plaintiff's evidence could cause a reasonable jury to disbelieve Arsens's proffered non-discriminatory reason, Plaintiff can survive summary judgment on the strength of her prima facie case alone. Id. at 764.

Plaintiff has produced enough evidence to call into question whether Plaintiff's reaction to being asked to administer a TB test was the actual reason for her dismissal. The Third Circuit has held that "the timing of an employee's dismissal . . . c[an] raise an inference of pretext which would make summary judgment for the employer inappropriate." Josey v. John R. Hollingsworth Corp., 996 F.3d 632, 638–39 (3d Cir. 1993). As explained above, the timing of Plaintiff's dismissal is unusually suggestive of an impermissible motive. Plaintiff was dismissed on her second day back from FMLA leave, and only two days after requesting additional leave to care for her mother. That Arsens's almost immediate reaction to Plaintiff's return was to terminate her employment provides some evidence that Plaintiff's protected activity was the real reason for her dismissal.

Arsens argues that Plaintiff's failure to promptly administer a TB test when requested was an intervening circumstance that severs the causal chain between Plaintiff's protected activity and her dismissal. (MSJ 21.) But a jury may find problems with Arsens's purported justification. First, there is inconsistent testimony about when Liautaud made the decision to terminate Plaintiff's employment. Liautaud testified that he decided to dismiss Plaintiff during their discussion in his office. (Pl.'s SMDF ¶ 58.) Morgan-Hawkins, however, testified that Liautaud told her of his intention to dismiss Plaintiff before he even spoke with Plaintiff about the incident. (Pl.'s SMDF ¶ 58.) Arsens contends that the timing of Liautaud's decision is immaterial, (ECF

13

47-1, Arsens's Resp. to Pl.'s SMDF ¶ 58), but a reasonable jury could question whether Liautaud was actually motivated by Plaintiff's failure to immediately administer a TB test if he made the decision to fire Plaintiff before even speaking with her about it.

Second, at the time Plaintiff was fired, Arsens was going through a transition period, and many employees had left the company. (Pl.'s SMDF ¶ 17.) Liautaud began holding meetings to slow down attrition and encourage employees to remain with Arsens. (Pl.'s SMDF ¶ 18.) Liautaud's concerns about staffing gives reason to doubt whether Liautaud would fire an experienced employee for questioning whether a TB should be administered, especially on a day in which Arsens typically did not administer TB tests.

There is also other evidence showing that Liautaud expressed displeasure with Plaintiff's FMLA leave. Henegan testified that while Plaintiff was recovering from her surgery, Liautaud expressed annoyance that Plaintiff was not at work through his tone and body language, as well as through comments such as "[y]ou're killing me!" (Pl.'s SMDF ¶¶ 26–27.) From all this evidence, a jury could reasonably conclude that Liautaud's actions were motivated by impermissible factors, and Plaintiff's failure to promptly conduct the TB test was simply the excuse Liautaud needed to make Plaintiff's dismissal appear legitimate. Arsens's Motion for Summary Judgment on Plaintiff's discrimination and retaliation claims will be denied.

### C. FMLA Interference

Plaintiff's FMLA interference claim is her only claim that does not follow the McDonnell Douglas burden shifting framework. Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006). Instead, FMLA interference requires a plaintiff to present proof that:

(1) he or she was an eligible employee under the FMLA;

(2) the defendant was an employer subject to the FMLA's requirements;

    (3) the plaintiff was entitled to FMLA leave;

    (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and

    (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

Gilhuly, 755 F.3d at 191–92.

Here, Plaintiff was dismissed two days after she requested intermittent FMLA leave to care for her mother. Arsens first argues that because Plaintiff's interference claim is based on the same facts as her FMLA retaliation claim, her interference claim should be dismissed as duplicative. (MSJ 18.) But the Third Circuit has made clear that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman, 582 F.3d at 509.

Arsens also argues that Plaintiff cannot established that her benefits were ultimately withheld. (MSJ 18.) But it is undisputed that Arsens never approved Plaintiff's FMLA leave request, as she was dismissed from her position. While an employer is not liable for FMLA interference if the employee is dismissed "for a reason other than interference with rights under the FMLA," Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 403 (3d Cir. 2007), as explained above, there is a genuine issue of material fact concerning the reason Plaintiff was dismissed. Accordingly, Arsens's Motion for Summary Judgment on Plaintiff's FMLA interference claim will be denied.

## VI. CONCLUSION

For the reasons stated above, Arsens's Motion for Summary Judgment will be denied. An appropriate Order follows.

O:\CIVIL 19\19-2343 Speights v Simplura Health Grp\19cv2343 Memo re Motion for Summary Judgment.docx